# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IVAN G. McKINNEY, | : |
| Plaintiff, | : Civ. No. 18-12987 (FLW) (LHG) |
| v. | : |
| SGT FITZGERALD et al., | : **MEMORANDUM OPINION** |
| Defendants. | : |

## I. INTRODUCTION

Plaintiff, Ivan G. McKinney ("McKinney" or "Plaintiff"), is a state prisoner incarcerated at New Jersey State Prison, in Trenton, New Jersey. He is proceeding *pro se* with this Complaint asserting violations of his civil rights under 42 U.S.C. § 1983. (*See* Compl., ECF No. 1.) The Court initially administratively terminated this action, as McKinney's application to proceed *in forma pauperis* was incomplete. (ECF Nos. 3 & 4.) McKinney thereafter submitted a proper *in forma pauperis* application, which was granted, and the action was reopened. (ECF Nos. 5 & 6.) Also before the Court is a motion by McKinney for appointment of *pro bono* counsel. (ECF No. 8.)

## II. SCREENING THE COMPLAINT

The Court must now review the Complaint under 28 U.S.C. § 1915(e), 28 U.S.C. § 1915A, and 42 U.S.C. § 1997e to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit. McKinney's claims in this action arise from alleged interactions with corrections officers on March 28, 2015, July 13, 2015, April

3, 2016, and April 5, 2016.  (*See* ECF No. 1.)  McKinney alleges that a corrections officer touched him inappropriately during a pat-down search on March 28, 2015 and that, when McKinney complained, other officers subjected him to a retaliatory strip search.  (*See id.* at ECF pp. 4–5, 6–9.)  He alleges that an officer pulled his pants down in the law library on July 13, 2015.  (*Id.* at ECF pp. 9–11.)  McKinney further contends that another officer inappropriately touched him during a pat-down search on April 3, 2016.  (*Id.* at ECF pp. 11–12.)  He claims that, after he filed a grievance regarding the last incident, several officers retaliated against him on April 5, 2016, by yelling at him and threatening him.  (*Id.* at ECF pp. 13–20.)

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review prisoner complaints when the prisoner (1) is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), (2) seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A, or (3) asserts a claim concerning prison conditions, *see* 42 U.S.C. § 1997e(c).  The PLRA directs district courts to *sua sponte* dismiss claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012); *see also Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).  That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  To survive the Court's screening for

failure to state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

*Pro se* pleadings, as always, will be liberally construed. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972); *Glunk v. Noone*, 689 F. App'x 137, 139 (3d Cir. 2017). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

Here, the Court first assesses the timeliness of McKinney's Complaint. Causes of action under 42 U.S.C. § 1983 are subject to the same two-year statute of limitations as claims for other personal injuries under New Jersey state law. *See Patyrak v. Apgar*, 511 F. App'x 193, 195 (3d Cir. 2013) (citing *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010)); *Evans v. Gloucester Twp.*, 124 F. Supp. 3d 340, 349 (D.N.J. 2015) (citing *Pittman v. Metuchen Police Dep't*, 441 F. App'x 826, 828 (3d Cir. 2011)).

McKinney's claims appear to be untimely from the face of the Complaint. He alleges that the underlying acts and harm occurred on March 28, 2015, July 13, 2015, April 3, 2016, and April 5, 2016. (*See* ECF No. 1.) Thus, the two-year limitations periods for his claims ended, respectively, on March 28, 2017, July 13, 2017, April 3, 2018, and April 5, 2018. The Complaint was received by the Clerk's Office on August 17, 2018, over four months after the

expiration of the latest limitations period, though I note that it included a cover letter dated August 13, 2018.  (*See* ECF No. 1-3.)  The Court will give McKinney the benefit of the doubt, as appropriate for a *pro se* litigant, and assume, under the "mailbox rule," *see Houston v. Lack*, 487 U.S. 266, 270–71 (1988), that he may have given it to prison staff for filing as early as its indicated date, August 13, 2018.  Nonetheless, the Complaint is still facially untimely.

In his cover letter, however, McKinney asserts that he originally sent his Complaint on May 12, 2016.  (*See* ECF No. 1-3.)  That letter reads,

> I filed this case on 05-12-16 in good faith!  I filed this at New Jersey State Prison on unit 4-C in good faith.  As-per the prisoner's mailbox rule in Houston v. Lack and other cases, The U.S. Supreme Court said that my mail is filed when I hand it to the officer.  I am refiling this action today 08-13-18 in good Faith certified mail.  I have enclosed my 05-12-16 Receipt in which I originally filed.

(*Id.*)  McKinney included a copy of an NJSP Postage Remit form which indicates a date of May 12, 2016 for legal mail sent to this district's Newark courthouse.  (ECF No. 1-5.)

McKinney's claim that he originally mailed his Complaint on May 12, 2016, but that it was never docketed, implicates two distinct legal doctrines:  the prison mailbox rule and the doctrine of equitable tolling.  In *Houston v. Lack*, 487 U.S. 266, the Supreme Court created the prison mailbox rule, designed for *pro se* prisoners, whereby a court filing will be deemed filed not when stamped received by the Clerk's office, but instead "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk."  *Id.* at 275–76.  In creating this rule, the Supreme Court noted that the *pro se* prisoner has no choice but to rely on the prison mail system in order to file documents with the Court; such a litigant has no ability to deliver the document in person or to quickly confirm with the Clerk's Office that the document has been timely received.  *See id.*  The rule is typically employed in cases where the *pro se* prisoner placed

4

a document in the prison mail system a few days before the relevant deadline and the document was not received by the Court until a few days after the deadline. *See, e.g.*, *Houston*, 487 U.S. at 268–69; *Moody v. Conroy*, 680 F. App'x 140 (3d Cir. 2017); *Coudriet v. Vardaro*, 545 F. App'x 99, 102 n.2 (3d Cir. 2013); *Paluch v. Sec'y Pa. Dep't of Corr.*, 442 F. App'x 690, 693 (3d Cir. 2011); *Terrell v. Benfer*, 429 F. App'x 74, 75 n.1 (3d Cir. 2011); *Spencer v. Beard*, 351 F. App'x 589, 590 (3d Cir. 2009).

McKinney's assertions here are very different from those considered in a typical prison mailbox case. This is not a situation where a prisoner placed a document in the mail shortly before a deadline and the court received that document a few days after that deadline. Instead, McKinney claims that he originally mailed his complaint in May 2016, but that it was *never* docketed and that, after more than two years had elapsed, he mailed another copy of the complaint. It appears unlikely that the *Houston* Court intended the prison mailbox rule to apply in such a distinct context, but there is support in some courts for the theory that a document may be treated as filed on the date it was delivered to prison authorities even if it is never docketed by the Court. *See Ray v. Clements*, 700 F.3d 993, 1002–13 (7th Cir. 2012); *Stoot v. Cain*, 570 F.3d 669 (5th Cir. 2009); *Allen v. Culliver*, 471 F.3d 1196 (11th Cir. 2006); *Huizar v. Carey*, 273 F.3d 1220 (9th Cir. 2001); *see also Nichols v. Coleman*, Civ. A. No. 08-cv-2445, 2010 WL 1053094, at *3 (E.D. Pa. Mar. 17, 2010). Each of these cases applied the prison mailbox rule to potentially toll the AEDPA limitations period when a prisoner claimed to have commenced a state PCR proceeding, but the state court had never received the pleading. *See Ray*, 700 F.3d at 1002–13; *Stoot*, 570 F.3d at 669–72; *Allen*, 471 F.3d at 1197–99; *Huizar*, 273 F.3d at 1222–24; *Nichols*, 2010 WL 1053094 at *3.

Without the benefit of the prison mailbox rule, there remains some possibility that McKinney's complaint could also be deemed timely by the application of the doctrine of equitable tolling. Equitable tolling under New Jersey law may arise

> where 'the complainant has been induced or tricked by his adversary's misconduct into allowing the deadline to pass,' or where a plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum.

*Cason v. Arie Street Police Dep't,* Civ. No. 10–497 (KSH), 2010 WL 2674399, at *5 n.4 (D.N.J. June 29, 2010) (quoting *Freeman v. State,* 788 A.2d 867, 879–80 (N.J. Super. Ct. App. Div. 2002)). The Court of Appeals for the Third Circuit has noted that "'[a] petitioner seeking equitable tolling bears the burden to show that he diligently pursued his rights and that some extraordinary circumstances stood in [the] way.'" *Hanani v. N.J. Dep't of Evnt'l Protection*, 205 F. App'x 71, 77 (3d Cir. 2006) (quoting *Satterfield v. Johnson*, 434 F.3d 185, 188 (3d Cir. 2006)). Thus, there is an argument to be made that equitable tolling should apply to the circumstances McKinney alleges, but is unclear how his decision to wait more than two years after sending the Complaint to follow up in any manner could equate to diligent pursuit of his rights.

In any case, however, the argument that McKinney's Complaint should be considered timely faces a larger hurdle than his seeming lack of diligence, namely, the very credibility of his assertions. McKinney is a frequent litigator in this district, and a simple review of his cases reveals a troubling pattern. He has asserted in at least four of his recent actions before this Court, including this one, that he gave his complaint to prison officials for mailing at an earlier date, falling before the applicable statute of limitations expired, but that the pleading was never docketed. *See McKinney v. Lanigan*, Civ. A. No. 18-8618 (FLW) (LHG), ECF No. 1, at 1;

*McKinney v. Lanigan*, Civ. A. No. 18-309 (FLW) (LHG), ECF No. 1-1; *McKinney v. Campos*, Civ. A. No. 16-4460 (FLW) (DEA), ECF No. 1, at 1. In each of these cases, he either references or includes a postage remit as evidence that he delivered his pleading for mailing at some earlier date. In each instance, however, there is evidence suggesting that the postage remit in question was in fact used to send some other document to the Court, which was timely received and docketed.

In *McKinney v. Campos*, Civ. A. No. 16-4460, the Court received McKinney's complaint on July 14, 2016. McKinney included a cover letter dated July 11, 2016, which asserted,

> I sent this package initially on 03-21-16. I did not receive any confirming documents that the court received such. I am re-submitting these documents on this day. I thank you for your time in this matter. My initial package was given to Officer Cherry on Unit 4-A on 03-21-16. And today im giving this package to desk officer Early and his partner on unit 4-C second shift. My legal mail has been tampered with so much I don't know what actually gets to its destination.

Civ. A. No. 16-4460, ECF No. 1 at 1. In support of his assertion that he originally mailed his complaint on March 21, 2016, McKinney included an NJSP Postage Remit, dated "03-21-16," which indicates that he sent legal mail to "U.S. District Court Attn. Clerks Office – Hon. Magastrate [sic] James B. Clark 50 Walnut St. Newark NJ 07101." *Id.*, ECF No. 1-2. The remit was witnessed by "M. Cherry." *Id.* This remit coincides exactly with a letter that McKinney sent in a case that remains pending in the Newark vicinage in which Judge Clark is the assigned Magistrate Judge. *See McKinney v. Holmes*, Civ. A. No. 14-3563 (KM) (JBC), ECF No. 16. That letter is dated "03-21-16" and is addressed to "Attn. Clerk's Office - Hon. Magastrate [sic] James B. Clark." *Id.* It was received and docketed on March 28, 2016. (*Id.*) It is inexplicable, and rather incredible, why McKinney would have sent a new pleading commencing a new action to the attention of Magistrate Judge Clark, as the alleged remit indicates.

7

Similarly, in *McKinney v. Lanigan*, Civ. A. No. 18-309, the Court received McKinney's complaint on January 9, 2018. That complaint asserted claims arising from a medical procedure in July 2014, indicating that the two-year limitations period for his claims would generally have expired in July 2016. *See* Civ. A. No. 18-309, ECF No. 1. McKinney included a cover letter with that complaint dated December 29, 2017, which read,

> On 07-11-16 I sent this enclosed complaint in good faith and gave it to the Regular second shift officer on 2C. I handed it to the officer with a New Jersey State Prison postage remit. I believe I full filled the prisoner's mailbox rule that says my legal mail is filed once I hand it to the officer. I have never heard from the court in Newark, at 50 Walnut Street in regards to this matter. I made copies today from a copy I had laying around. Maybe the papers got missed place [sic] in the court, or this jail never sent it out. I am now sending it to your Court here in Trenton. The District court in Trenton knows about the severe problems I had with my legal mail here at this prison: See McKinney v. George Robinson, before the Hon. Judge Freda Wolfson, and the Magastrate [sic] Judge Douglas Arpert. I did not contact the court in Newark because I thought everything was under control. I thought because im citing some product liability that maybe it took longer or something. Please see that this get filed at your earliest [sic]. I have enclosed a copy of the 07-11-16 proof that I send it by postage remit. I certify the forgoing [sic] by me is true, and if found to be false im subject to criminal/civil penalties.

Civ. A. No. 18-309, ECF No. 1-1. He again included a postage remit, which was dated "07-11-16" and which indicates postage in the amount of $2.20. *Id.* at 1. This remit coincides exactly with the supposed resubmission of McKinney's complaint in Civil Action 16-4460. The cover letter for that complaint is dated "07-11-16," Civ. A. No. 16-4460, ECF No. 1 at 1, and the envelope for that filing is postmarked July 12, 2016 and appears to bear postage in the amount of $2.20, the same amount indicated on the postage remit filed with the cover letter in Civil Action 18-309, *compare* Civ. A. No. 16-4460, ECF No. 1-3 *with* Civ. A. No. 18-309, ECF No. 1-1 at 1.

In *McKinney v. Lanigan*, Civ. A. No. 18-8618, the Court received McKinney's complaint on April 23, 2018. That complaint asserted claims arising from incidents that occurred in November and December 2015, indicating that the two-year limitations period for his § 1983 claims would generally have expired by the end of 2017. *See* Civ. A. No. 18-8618, ECF No. 1. McKinney included a cover letter with that complaint dated April 17, 2018, which read, "I am resubmitting this complaint because I never heard back from the Court. I initially filed this complaint 03-19-17[1] by Postage Remit. I have had a lot of problems with legal mail here and may have gotten lost [sic]." Civ. A. No. 18-8618, ECF No. 1 at 1. This filing included no postage remit as an exhibit, but the alleged date of his original filing seems to coincide precisely with a letter he sent this Court in *McKinney v. Campos*, Civ. A. No. 16-4460, which was received by the Court on March 22, 2017, in an envelope postmarked March 20, 2017. *See* Civ. A. No. 16-4460, ECF No. 22.

The circumstances in this action are entirely consistent with the pattern that exists in McKinney's other cases. As already noted, the Court received McKinney's complaint on August 17, 2018, and the Complaint asserts claims arising incidents in March 2015, July 2015, and April 2016, indicating that all limitations periods had expired by April 2018. (*See* ECF No. 1.) McKinney's cover letter, quoted in full above, was dated August 13, 2018, but alleged that McKinney had previously mailed the Complaint to the Court on May 12, 2016. (ECF No. 1-3.) He again included a postage remit, which is dated "05-12-16" and which indicates postage in the amount of $1.57. (ECF No. 1-5.) This remit coincides exactly with a motion that McKinney sent in another case he has pending in the Newark vicinage. *See McKinney v. Hemsley*, Civ. A. No. 14-3564 (KM) (JBC), ECF No. 35. A cover letter included with the motion is dated "05-12-

---

[1] In this letter McKinney seems to have written the date "03-19-17" over an original listed date of "03-10-17." *See* Civ. A. No. 18-8618, ECF No. 1 at 1.

9

16," and the motion was received and docketed on May 16, 2016. *See id.*, ECF No. 35-2. The envelope for this motion is postmarked May 13, 2016 and bears postage for $1.57—the same amount indicated on the postage remit that supposedly reflects the mailing of the Complaint in this action. *See id.* at 3. I additionally note that McKinney's Complaint, supposedly drafted in May 2016, also inexplicably alleges in its claim against Antonio Campos that he was the acting administrator on "03-28-<u>18</u>."[2] (ECF No. 1 at ECF p. 9 (emphasis added).)

This pattern casts grave doubt on all of McKinney's representations regarding his efforts to file complaints in a timely fashion. Even were the Court to accept McKinney's assertions that he has recurring problems with his legal mail, the evidence reviewed above, if taken at face value, would require the Court to believe that each time McKinney attempted to mail a complaint that disappeared without a trace, he simultaneously mailed another document to the Court, sometimes bearing the exact same postage amount, which was promptly mailed, received by the Clerk's Office, and docketed. If McKinney is alleging tampering by prison staff with his legal mail, it is unclear how or why the staff would, in each instance, have prevented the mailing of a complaint to the court but, at the exact same time, would have promptly forwarded McKinney's other legal mail (which, in one instance, was another complaint). These supposed circumstances strain credulity.

Furthermore, contrary to McKinney's constant assertions that he placed his documents in the mail in good faith, this pattern of filings strongly indicates that he has been acting in bad faith. The prison mailbox rule and the doctrine of equitable tolling exist for the purpose of ensuring that *pro se* prisoner litigants are not unfairly disadvantaged by the inherent limitations

---

[2] Another section of the Complaint's allegations includes two dates where McKinney wrote a corrected year of "16" over what appears to originally have been "18." (*See* ECF No. 1 at ECF p. 15.)

10

of their circumstances. They are intended to ensure that prisoners receive a *fair* shot at litigating their claims despite the disadvantages and unavoidable obstacles that derive from their incarceration. These doctrines are *not*, however, meant to be abused by prisoners to sidestep the statutes of limitations that apply to their claims.

The Court thus orders McKinney to show cause why his Complaint in this action should not be dismissed as untimely. Given the implausible coincidences revealed by reviewing McKinney's filings herein and in other cases, he will bear a difficult burden of proving to the Court not only that he in fact originally filed his complaint on May 12, 2016, but that, even if he did, such an attempted filing is sufficient to deem his refiling more than two years later to be timely. In light of these issues, the Court does not undertake any screening of the merits of McKinney's claims until the timeliness questions are resolved.

### III. MOTION FOR *PRO BONO* COUNSEL

McKinney also has pending before the Court a motion for the appointment of *pro bono* counsel. (ECF No. 8.) Generally, civil litigants have no constitutional or statutory right to counsel. *See United States v. Zoebisch*, 586 F. App'x 852, 856 (3d Cir. 2014). In some cases, the need for representation is great, and thus 28 U.S.C. § 1915(e)(1) grants district courts broad discretion to request the appointment of attorneys to represent indigent civil litigants in appropriate circumstances. The Court recognizes, however, that "volunteer lawyer time is extremely valuable" and, for that reason, that "district courts should not request counsel . . . indiscriminately." *Tabron v. Grace*, 6 F.3d 147, 157 (3d Cir. 1993). The Court must bear in mind "the significant practical restraints on the district court's ability to appoint counsel: . . . the lack of funding to pay appointed counsel[] and the limited supply of competent lawyers who are willing to undertake such representation without compensation." *Id.*

When evaluating an application for the appointment of *pro bono* counsel, the Court assesses seven factors originally identified by the United States Court of Appeals for the Third Circuit in *Tabron v. Grace*, 6 F.3d 147:

1. the potential merit of the applicant's legal position;

2. the applicant's ability to present the case without counsel;

3. the complexity of the legal issues involved;

4. the extent of factual discovery and the applicant's ability to investigate and to comply with discovery rules;

5. the extent to which the case may turn on credibility determinations;

6. whether expert testimony will be needed; and

7. whether the applicant can afford paid counsel.

*See Pricaspian Dev. Corp. v. Martucci*, No. 11-1459, 2011 WL 2429315, at *2 (D.N.J. June 13, 2011) (citing *Tabron*, 6 F.3d at 155, 158); *Prudential Ins. Co. of Am. v. Dobson*, No. 08-3951, 2009 WL 115966, at *1–2 (D.N.J. Jan. 16, 2009) (same). A finding of potential merit of the applicant's arguments is a threshold determination that must be established before considering any other factors. *See Dobson*, 2009 WL 115966 at *2; *Protameen Chems., Inc. v. Chinchilla*, No. 05-3383, 2007 WL 174163, at *1 (D.N.J. Jan. 22, 2007).

Applying this test, the Court finds that McKinney fails to show that appointment of *pro bono* counsel is presently warranted. McKinney cannot meet the threshold requirement of a potentially meritorious claim, as it presently appears that his claims are untimely. Accordingly, the Court denies his motion for appointment of *pro bono* counsel without reaching the remaining *Tabron* factors. *See Dobson*, 2009 WL 115966 at *2.

## IV. CONCLUSION

For the reasons explained above, upon screening the Complaint, the Court orders McKinney to show cause within 30 days why his Complaint should not be dismissed as untimely. Furthermore, McKinney's motion for appointment of *pro bono* counsel, (ECF No. 8), is denied. An appropriate order follows.


DATED: February 1, 2019               /s/ Freda L. Wolfson
                                      FREDA L. WOLFSON
                                      United States District Judge